IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY PATTISON,<br><br>    Plaintiff,<br><br>  v.<br><br>HP INC.,<br><br>    Defendant. | Case No. 24-cv-02752-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS; AFFORDING PLAINTIFF LIMITED LEAVE TO AMEND; SETTING CASE MANAGEMENT CONFERENCE** |

    Before the Court is defendant HP Inc.'s ("HP") "Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Strike," filed October 22, 2024. Plaintiff Mary Pattison ("Pattison") has filed opposition, to which HP has replied. Having read and considered the papers filed in support of and in opposition to the motion,[1] the Court rules as follows.[2]

    In her Second Amended Complaint ("SAC"), Pattison alleges she and HP entered into a contract titled "HP Care Pack Support Terms" (hereinafter, "Terms") (see Quarles Decl., filed August 9, 2024, Ex. A),[3] and that she did so in reliance on "false" statements on HP's website that a customer who does not use the services set forth in the Terms is entitled to a full refund at the end of the three-year contractual period (see SAC ¶¶ 15-16, 45, 50). Based thereon, Pattison asserts, on her own behalf and on behalf of a putative

---

[1] Pattison's motion for leave to file a surreply, which motion HP has opposed, is hereby DENIED. In the proposed surreply, Pattison argues that several cases cited in HP's reply are distinguishable. The Court, however, has read and considered those cases and does not need additional briefing to assess the authority cited by HP.

[2] By order filed December 2, 2024, the Court took HP's motion under submission.

[3] In connection with HP's motion to dismiss the First Amended Complaint, the Court took judicial notice of the Terms and again does so.

1  class, two Causes of Action titled, respectively, "Fraud" and "Violation of the Consumers

2  Legal Remedies Act," which claims she brings under California law.  HP argues both

3  causes of action are subject to dismissal for failure to state a claim, or, in the alternative,

4  that Pattison's class allegations should be stricken.

**A.  Motion to Dismiss:  Fraud Claim**

HP, relying on California's "governmental interest test," see Mazza v. American Honda Co., 666 F.3d 581, 590 (9th Cir. 2012), takes the position that Texas law applies to Pattison's fraud claim, and that, under Texas law, her claims are subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  The government interest test, however, applies only where "there is no advance agreement on the applicable law," i.e., a "contractual choice-of-law provision[ ]," see Washington Mutual Bank, FA v. Superior Court, 24 Cal. 4th 906, 915 (2001), and, here, the parties' contract provides that "[a]ny disputes arising in connection with this [a]greement will be governed by the laws of the State of California" (see Quarles Decl. Ex. A ¶ 18), broad language that HP fails to show does not encompass Pattison's fraud claim, see Bernhard v. Harrah's Club, 16 Cal. 3d 313, 317-18 (1976) (holding party seeking to "invoke the law" of non-forum state has burden to demonstrate other state's law applies).[4]

---

[4] The cases cited by HP, wherein courts found false advertising claims did not fall within the scope of a choice-of-law provision, are distinguishable, in that each involved a provision narrower than the provision in the Terms, namely, a provision limited to the construction of the contractual terms at issue therein and/or specific events arguably governed thereby.  See In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 561 n.5, 578 (9th Cir. 2019) (considering contract providing "[t]he terms and conditions of this buyers order . . . and any Sale/Lease hereunder will be governed by the laws of the commonwealth of Virginia") (alteration and omission in original); Orshan v. Apple Inc., 2024 WL 4353034, at **11-12 (September 30, 2024) (considering contract providing "[t]his License will be governed by and construed in accordance with the laws of the State of California"); Brown v. Madison Reed, Inc., 622 F. Supp. 3d 786, 796 (N.D. Cal. 2022) (considering contract providing "[t]hese terms and any action related thereto will be governed by the laws of the State of California"); Ochoa v. Zeroo Gravity Games, LLC, 2023 WL 4291650, at *11 (C.D. Cal. May 24, 2023) (considering contract, set forth in Doc. No. 42-2, providing "[t]hese terms and our relationship will be governed by the laws of the State of California").

2


Alternatively, HP argues the fraud claim is subject to dismissal under California law.  First, HP argues, the fraud claim should be dismissed for the asserted reason that Pattison fails to allege facts to support a "fraudulent concealment" claim.  (See Def.'s Mot. at 12:9.)  The Court remains unpersuaded, as, under California law, a fraud claim may be based on a theory of "false representation, concealment, *or* nondisclosure," see Engalla v. Permanente Medical Group, 15 Cal. 4th 951, 974 (1997) (emphasis added), and, here, Pattison alleges HP made false representations to her (see SAC ¶ 16); consequently, she need not allege facts to support a concealment theory to state a fraud claim.  To the extent, however, Pattison's fraud claim can be read as asserting that HP, at the time it entered into the contract, had no intent to perform a contractual duty to provide a full rebate upon conclusion of a three-year contractual period, the Court, in its order addressing HP's motion to dismiss the First Amended Complaint, dismissed the claim (see Order, filed October 2, 2024, at 3:9-13), and, as Pattison fails to point to any additional allegations in the SAC that could support such a claim, the Court again will dismiss the fraud claim to the extent it is based on such theory.

Next, HP argues that Pattison fails to sufficiently plead that the challenged statements on its website were false when made.  The Court disagrees, as the HP website's alleged description of the contents of the Terms is contrary to the actual Terms. (Compare SAC ¶ 16 (identifying statements on website descriptive of contract terms) with Quarles Decl. Ex. A (setting forth Terms).)

Accordingly, the fraud claim will be dismissed only to the extent it is based on a theory that HP did not intend to perform a contractual promise.

**B.  Motion to Dismiss:  Consumers Legal Remedies Act ("CLRA") Claim**

To the extent HP argues California law does not apply under the government interest test, and, consequently, that Pattison cannot seek relief under any California statute, the Court, for the reasons stated above, disagrees.

To the extent HP alternatively argues the CLRA claim fails under California law, however, the Court agrees.  As HP points out, Pattison resides in Texas (see SAC ¶ 10),

3

1  and the CLRA does not have extraterritorial application, see Sullivan v. Oracle Corp., 51
2  Cal. 4th 1191, 1207 (2011) (holding "presumption against extraterritorial application" of
3  state law requires courts to determine if "proposed application of [state law] would cause
4  it to operate, impermissibly, with respect to occurrences outside the state").  Although the
5  California Supreme Court has held that where "conduct that form[s] the basis of the out-
6  of-state plaintiffs' claims (i.e., fraudulent misrepresentations made to induce consumer
7  transactions) . . . occurred in California," California law applies even where the plaintiff
8  resides out of state, see id. at 1208 n.10 (citing cases), Pattison's allegation that HP's
9  headquarters and principal place of business is located in California (see SAC ¶¶ 2, 7) is,
10 standing alone, insufficient, see Cannon v. Wells Fargo N.A., 917 F.Supp.2d 1025, 1055-
11 56 (N.D. Cal. 2013) (finding allegation that defendant's "principal place of business [is] in
12 California" insufficient to plausibly allege advertising at issue originated from California),
13 and Pattison's additional allegation that the "acts and omissions giving rise to [her] claims
14 occurred in and emanated from this District" (see SAC ¶ 7) is conclusory and,
15 consequently, likewise insufficient, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (holding
16 courts "are not bound to accept as true a legal conclusion couched as a factual
17 allegation"); cf., e.g., Ehret v. Uber Technologies, Inc., 68 F. Supp. 3d 1121, 1132 (N.D.
18 Cal. 2014) (finding out-of-state plaintiff sufficiently alleged defendant's conduct
19 "emanated from California," where plaintiff alleged that the "misrepresentations [at issue]
20 were developed in California," that such misrepresentations were "contained on websites
21 and an application that are maintained in California," and that the "billing and payment of
22 services went through servers located in California").

23      Accordingly, the CLRA claim is subject to dismissal.

24 **C. Motion to Strike Class Allegations**

25      Pattison seeks to proceed on behalf of the following class:  "All individuals and
26 entities residing within the United States and its territories who have (a) purchased
27 computer equipment along with a Care Pack from HP Inc. that covered the computer
28 equipment; and (b) not experienced a service event involving the computer equipment for

three years since the purchase of the Care Pack."  (See SAC ¶ 28.)

HP, relying on the above-referenced government interest test, contends Pattison cannot proceed on behalf of a nationwide class.  In support thereof, HP cites to Mazza, wherein the Ninth Circuit held that, under the "government interest test," the district court erred in certifying a nationwide class, where California and a number of other states had "materially different consumer protection laws" and "each state ha[d] a strong interest in applying its own consumer protection laws to those transactions [occurring in its state]."  See Mazza, 666 F.3d at 590-91.  Here, however, unlike the plaintiffs in Mazza, Pattison relies on a choice-of-law provision applicable to her claim; consequently, as discussed above, the government interest test does not apply.  Further, as the choice-of-law provision is included in a form contract written by HP, a reasonable inference arises that each putative class member's Terms likewise include such provision, and, consequently, at the pleading stage, the government interest test would not apply to putative class members.

HP also argues the putative class is overbroad, on the ground that such class includes persons who were not harmed by the alleged misrepresentations.  Pattison alleges, however, that she, "like every other Class member, has suffered from virtually identical conduct" (see SAC ¶ 34), which conduct she identifies as HP's statement on its website that a full rebate was available at the conclusion of the three-year period, HP's invoice for the Terms describing said product as "Risk Free" (see SAC ¶¶ 15-16), and HP's "Claim Form," which, Pattison alleges, is available on the website to customers before they purchase a Care Pack and states that, when it is submitted, a customer "will receive [a] rebate check by mail within 8-10 business days" (see SAC ¶ 18).  Although it remains to be seen whether Pattison will be able to establish her allegation that all putative class members were, prior to entry into their respective contracts, exposed to HP's alleged promise to provide a rebate at the conclusion of the three-year contractual

//

//

period, HP's argument that the class definition is overbroad is, at this stage, premature.[5]

**CONCLUSION**

For the reasons stated above, HP's motion is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the fraud claim is based on a failure to perform contractual obligations, the motion is GRANTED, and said claim is DISMISSED.

2. To the extent HP seeks dismissal of the CLRA claim, the motion is GRANTED.

3. In all other respects, the motion is DENIED.

4. If Pattison wishes to amend for the limited purpose of amending her CLRA claim, Pattison shall file any Third Amended Complaint no later than December 30, 2024. Pattison may not otherwise amend without first seeking leave of court or obtaining a stipulation from HP. See Fed. R. Civ. P. 15(a)(2).

5. A Case Management Conference is hereby SET for February 21, 2025, at 10:30 a.m. A Joint Case Management Statement shall be filed no later than February 14, 2025.

**IT IS SO ORDERED.**

Dated: December 5, 2024

MAXINE M. CHESNEY
United States District Judge

---

[5] The Court also notes that, to the extent the evidence may not support a finding that all purchasers of a Care Pack were made aware of the representations at issue, or that the putative class otherwise is overbroad, the Court, at the class certification phase, "may redefine the overbroad class to include only those members who can rely on the same body of common evidence to establish the common issue." See Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (observing "the problem of a potentially over-inclusive class can and often should be solved by refining the class definition rather than denying class certification on that basis").