UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY PATTISON,<br><br>        Plaintiff,<br><br>    v.<br><br>HP INC.,<br><br>        Defendant. | Case No. 24-cv-02752-MMC   (KAW)<br><br>**ORDER REGARDING 9/30/2025 DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 77, 78<br><br>[Discovery Letter Nos. 1-2] |

Plaintiff Mary Pattison filed the instant putative class action against Defendant HP Inc., alleging that Defendant sells a "risk free" service program called HP Care Packs ("Care Pack") in connection with its computers and related equipment. (Third Amend. Compl. ("TAC") ¶ 12, Dkt. No. 55.) Under this program, if the purchaser has no service events related to the associated computer or equipment covered by the Care Pack for three years, the purchaser is entitled to a full rebate of the Care Pack cost within ten weeks of a timely submission of a rebate form. (TAC ¶ 12.) Plaintiff, however, alleges that Defendant fails to properly administer the Care Pack program and timely provide rebates. (TAC ¶ 25.) Plaintiff's claim is on behalf of: "All individuals and entities residing within the United States and its territories who have (a) purchased computer equipment along with a Care Pack from HP Inc. that covered the computer equipment; and (b) not experienced a service event involving the computer equipment for three years since the purchase of the Care Pack." (TAC ¶ 30.)

On September 30, 2025, the parties filed two discovery letters regarding: (1) Plaintiff's interrogatories, and (2) Plaintiff's Requests for Production ("RFPs").[1] (Dkt. Nos. 77-78.)

---

[1] The Court notes that as to Discovery Letter No. 2, the footnote size is improper. (*See* N.D. Cal. Civil Local Rule 3-4(c)(2) (requiring that all written text, including footnotes, be in 12-point type

**A.     Discovery Letter re Interrogatories (Discovery Letter No. 1)**

   **i.     Interrogatory No. 3**

Interrogatory No. 3 requires that Defendant "[i]dentify the number of Care Packs sold, the total number of Care Packs that have covered service events, and the total Care Pack rebate requests that HP has fulfilled since the Care Pack program's inception." (Discovery Letter No. 1 at 2, Dkt. No. 77.) Defendant has provided the number of rebate requests for the Risk-Free Care Pack program from 2020 to 2024. (Discovery Letter No. 1, Exh. A at 6.)

As an initial matter, to the extent there is a dispute over whether Plaintiff's use of "Care Packs" in its discovery requests is overbroad because Defendant sells two types of warranties, Plaintiff states that it defined "Care Pack" as being the "risk free" care packs at issue in this case. (Discovery Letter No. 1 at 3.) Defendant does not appear to contradict that Plaintiff included this limitation in its definition. Thus, any objections that Plaintiff's use of the term "Care Packs" is overbroad despite Plaintiff defining "Care Packs" as the "risk free" care packs at issue in this case are not well-taken.

With respect to the number of Care Packs sold, Plaintiff fails to explain how this information is relevant or likely to lead to discoverable evidence. As defined, the class does not include every individual or entity who bought a Care Pack, but those who purchased a Care Pack and did not experience a service event. (TAC ¶ 30.) Thus, Defendant need not respond.

Likewise, the total number of Care Packs that have covered service events also appears to have no relevance. Plaintiff's only apparent explanation is that individuals who had service events would be excluded from the class, which may support ascertainability. (Discovery Letter No. 1 at 3-4.) This is not persuasive, particularly when Plaintiff has propounded discovery as to the individuals who are part of the class definition. Thus, Defendant need not respond.

   **ii.     Interrogatory No. 5**

Interrogatory No. 5 requires that Defendant "[i]dentify all customers, including their names, emails, phone numbers and addresses, who purchased computer equipment and Care Packs

---

or larger).) Going forward, the Court will not consider any non-compliant footnotes.

to cover such equipment during the six years preceding the date this Lawsuit was filed but did not have any service events covered by the Care Pack, and the amount they each spent on the covered computer equipment and the Care Pack." (Discovery Letter No. 1 at 2.) Defendant has provided no substantive response. (Discovery Letter No. 1, Exh. A at 9.)

This information is discoverable because it concerns the individuals who belong to the class as defined by Plaintiff. Courts have found that a "[p]laintiff is entitled to reasonable pre-certification discovery of the putative class members' contact information. The Supreme Court has recognized the importance of permitting class counsel in Rule 23 actions to communicate with potential class members for the purpose of gathering information, even prior to class certification." *Ulloa v. Securitas Sec. Servs. USA, Inc.*, No. 23-cv-01752-DMR, 2024 U.S. Dist. LEXIS 114763, at *5 (N.D. Cal. June 28, 2024); *see also Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-cv-411-WQH-AHG, 2020 U.S. Dist. LEXIS 7558, at *16 (S.D. Cal. Jan. 14, 2020) (finding that contact information for the putative class was discoverable because "it concerns Plaintiff's ability to conduct an investigation into this case by having basic informational access to percipient witnesses" and concerned "Plaintiffs[' ] opportunity to substantiate their class allegations, or rebut Defendants' opposition to class certification, through class member declarations"); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 506 (C.D. Cal. 2011) ("Especially after [*Iqbal-Twombly*], which require greater specificity in pleading, class counsel should be permitted to pursue reasonable discovery with potential class members after a motion to dismiss is denied.").

Defendant's reliance on *In re Williams-Sonoma, Inc.* is distinguishable; there, plaintiff was a Kentucky resident whose class action had been dismissed because Kentucky law prohibited class actions. 947 F.3d 535, 537-38 (9th Cir. 2020). The plaintiff decided to move forward with his individual claim, but also sought discovery of California customers "for the sole purpose of aiding his counsel's attempt to find a California purchaser . . . who might be willing to sue." *Id.* at 538. The Ninth Circuit understandably found that such discovery "to find a client to be the named plaintiff" was not relevant to the case at hand, *i.e.*, the Kentucky plaintiff's individual claim. *Id.* at 540. The facts here are readily distinguishable; Plaintiff is not seeking class discovery to seek a lead plaintiff for a future case, but to identify the class members and investigate the class claims

3

1    that have been pled and survived multiple rounds of pleading motions in this case.

2          To the extent Defendant complains that the class should be limited only to individuals
3    who, like Plaintiff, asked for a rebate, the presiding judge recently denied Defendant's motion to
4    dismiss claims on behalf of class members who had not applied for a rebate, finding that the
5    putative class "is not defined as persons who submitted requests for rebates, but, rather, persons
6    who purchased a computer and Care Pack." (11/6/25 Order at 4-5, Dkt. No. 88; *see* Discovery
7    Letter No. 1 at 5.) As to Defendant's argument that information about the equipment purchase
8    cost being unjustified, such information goes to the damages theory that the presiding judge also
9    permitted to move forward. (11/6/25 Order at 4.)

10         In the alternative, Defendant argues that it does not keep this information in the normal
11   course of business. (Discovery Letter No. 1 at 6.) Specifically, Defendant asserts that purchase
12   data, customer support data, and rebate data are not housed on the same database. (*Id.* at 5.) To
13   cross-reference whether, for example, a computer was subject to a service event during a care
14   pack's service term requires these different data sources to be cross-referenced and assessed on a
15   case-by-case basis, a process that typically takes 30 minutes or more per case. (*Id.*)

16         Given that the information is kept electronically, it is not clear to the Court why the data
17   cannot be cross-referenced in a more manageable manner. *See Stemple v. QC Holdings, Inc.*, No.
18   12-cv-1997-CAB (WVG), 2013 U.S. Dist. LEXIS 99582, at *11 (S.D. Cal. June 17, 2013)
19   (requiring production of an outbound dial list not kept in the ordinary course of business even
20   though the production would require a manual process of cross-referencing customer files to
21   determine whether outbound calls were made using a predictive dialer because the calls were kept
22   as electronic records and "[e]lectronic records will allow cross-referencing to be significantly
23   more manageable"). But even assuming Defendant has established burden, Defendant has not
24   established *undue* burden. As discussed above, the discovery being requested is based on the class
25   definition, and Plaintiff is entitled to such discovery to gather evidence and prepare for the class
26   certification motion.

27         Finally, Defendant argues that it cannot provide personally identifying information ("PII")
28   because it "commit[ed] that HP 'will use any PII to which it has access strictly for purposes of

delivering the services ordered.'" (Discovery Letter No. 1 at 6.) Defendant cites no authority that such an agreement can abrogate its discovery obligations. Rather, "[a]lthough courts have recognized a privacy interest in one's home address and telephone number, courts have permitted the disclosure of such information where a plaintiff shows a legitimate need," such as to prosecute a class action. *Nguyen*, 275 F.R.D. at 507. The Court also notes that there is a stipulated protective order in this case (*see* Dkt. No. 64), and Defendant has made no suggestion that this protective order is insufficient to protect the PII at issue. *See Nguyen*, 275 F.R.D. at 508 (finding that disclosure of PII can be conditioned "through the use of appropriate protective orders"); *Amaraut*, 2020 U.S. Dist. LEXIS 7558, at *20-21 ("federal courts in this circuit have held that a protective order . . . sufficiently protects putative class members and aggrieved employees' privacy interests in the confidentiality of their contact information"); *Austin v. Foodliner, Inc.*, No. 16-cv-7185-HSG (DMR), 2018 U.S. Dist. LEXIS 36685, at *4-5 (N.D. Cal. Mar. 6, 2018) ("The predominant practice among courts in the Northern District of California is to allow pre-certification discovery of putative class members' confidential contact information subject to a protective order.").

Accordingly, the Court ORDERS Defendant to respond in full to Interrogatory No. 5.

### iii. Interrogatory No. 6

Interrogatory No. 6 requires that Defendant "[i]dentify all customers . . . who purchased computer equipment and Care Packs to cover such equipment but did not have any service events covered by the Care Pack during the six years preceding the date this Lawsuit was filed, and submitted a rebate claim form but did not receive a rebate at all or did not receive a rebate within 10 weeks of submitting the rebate claim form. Also identify the amount these customers each spent on the covered computer equipment and the Care Pack." (Discovery Letter No. 1, Exh. A at 9-10.) Defendant responded with the number of customers who received rebates. (Discovery Letter No. 1 at 6.)

It appears Interrogatory No. 6 seeks a subset of information requested by Interrogatory No. 5, namely class members who submitted rebate claims but did not receive timely rebates. Defendant's arguments in opposition are also the same, complaining that the information is not

5

1  relevant, not maintained in the normal course of business, and would impose an undue burden.
2  For the same reasons discussed above, the Court rejects those arguments. The Court ORDERS
3  Defendant to respond in full to Interrogatory No. 6.

          iv.    **Interrogatory Nos. 9-11**

Interrogatory No. 9 seeks "the number of individuals and entities who purchased HP computer equipment and a Care Pack during the six years preceding the date this Lawsuit was filed." (Discovery Letter No. 1, Exh. A at 13.) Interrogatory No. 10 seeks "the number of individuals and entities who purchased HP computer equipment and a Care Pack that covered such computer equipment and did not claim a Service Event during the six years preceding the date this Lawsuit was filed." (*Id.* at 14.) Finally, Interrogatory No. 11 seeks "the number of individuals and entities who purchased HP computer equipment and a Care Pack that covered such computer equipment and claimed a Service Event during the six years preceding the date this lawsuit was filed." (*Id.* at 15.) Defendant provided no response to these three interrogatories.

The Court finds that Interrogatory Nos. 9 and 11 are overbroad because they seek information outside the class definition. Again, Plaintiff fails to explain why individuals with service events would be relevant in this case, given that the class definition is explicitly limited to individuals who did *not* have service events. Interrogatory No. 10, in contrast, is specific to the class. Therefore, the Court ORDERS Defendant to respond in full to Interrogatory No. 10.

    **B.**    **Discovery Letter re RFPs (Discovery Letter No. 2)**

          i.    **"General Objections"**

Plaintiff complains that Defendant's response to Plaintiff's RFPs includes a "Preliminary Statement" and "General Objections." (Discovery Letter No. 2 at 2.) The Preliminary Statement states that HP's responses are subject to ongoing investigation, while the General Objections are boilerplate objections that apply "to the extent" a request violates those objections. (*Id.*)

The parties have agreed that Defendant will withdraw its General Objections except for attorney-client and work product privilege. (Discovery Letter No. 2 at 2.) It is unclear what dispute is still at issue. That said, boilerplate general objections are generally not well-taken. *See Springer v. Gen. Atomics Aeronautical Sys.*, No. 16cv2331-BTM(KSC), 2018 U.S. Dist. LEXIS

6

1    9032, at *4 (S.D. Cal. Jan. 18, 2018) (finding that the General Objections were "boilerplate, non-
2    specific, and unsupported," and thus overruling them all as improper).
3         As to the Preliminary Statement, Plaintiff argues that it is improper because the Court's
4    standing order requires Defendant to confirm that it has produced all materials that are locatable
5    following a diligent search. (Discovery Letter No. 2 at 2.) Defendant, however, points out that it
6    is continuing to produce documents, and thus Plaintiff's concerns appear premature at this time.
7    (*Id.*) To be clear, the Preliminary Statement does not affect Defendant's obligation to comply with
8    the Court's standing order once it has completed its production.

    **ii.    RFP Nos. 1 and 7**

10       RFP No. 1 seeks documents "related to complaints against HP whether online, through
11   emails, phone calls, or presented in any other lawsuit, including pleadings, and demand letters
12   pertaining to rebates for Care Packs." (Discovery Letter No. 2 at 3.) Defendant states it has
13   produced website complaints and confirmed that no other lawsuits, pleadings, or other demand
14   letters exist. (*Id.* at 4.) RFP No. 7 seeks documents, "including phone records and emails, related
15   to all HP customers' attempts to resolve issues regarding delays, or any other problems, in
16   processing and providing rebates for Care Packs." (*Id.* at 3.) Defendant does not state it has
17   produced any documents in response. (*See id.* at 4.)
18       Defendant states that customers communicate with it through a specific e-mail address, and
19   those communications include inquiries regarding the status of rebate payments. (Discovery
20   Letter No. 2 at 4.) Defendant states that because almost all rebates are timely paid, and issues
21   unrelated to the timing of a rebate check could be raised, most of the e-mails are irrelevant. (*Id.*)
22   Plaintiff, however, has not asked for all e-mails sent to this e-mail address; Plaintiff has asked for
23   e-mails complaining about the rebates and/or timing of the rebates. Defendant fails to explain why
24   it has failed to search for the relevant e-mails, except to complain that Plaintiff never proposed
25   search terms and custodians. (*Id.* at 4.) Defendant cites no authority that it can simply not act;
26   Defendant has an obligation to provide the e-mails and must do so.
27       The Court further notes that as Plaintiff points out, Plaintiff's request is not limited to
28   customer complaints but also seeks internal e-mails about complaints. (Discovery Letter No. 2 at

7

3.) Plaintiff also states that Defendant has refused to search the inboxes of former employees. (*Id.* at 4.) While Defendant complains that Plaintiff later identified custodians that included former senior executives who did not have any involvement with the Care Pack program, this does not justify a blanket refusal to search the inboxes of all former employees. (*Id.* at 4-5.)

In the alternative, Defendant raises the same concern regarding PII. (Discovery Letter No. 2 at 4.) As previously discussed, Defendant can produce the requested information subject to the protective order.

Accordingly, the Court ORDERS Defendant to respond in full to RFP Nos. 1 and 7, including production of internal e-mails and those found in the inboxes of former employees (to the extent any such e-mails exist).

### iii. RFP No. 11

RFP No. 11 seeks documents "related to the failure to provide working website links, phone numbers, or adequately inform customer service representatives regarding Care Packs and related rebate forms." (Discovery Letter No. 2 at 3.) Defendant states that it has produced non-privileged internal e-mails regarding issues with the website links and phone numbers. (*Id.* at 4.) Plaintiff fails to identify what documents it is still seeking. Accordingly, the Court will not require further production.

### iv. RFP No. 15

RFP No. 15 seeks documents "regarding the timeline for processing Care Pack rebates, including but not limited to deciding on the timeline and failures to meet the timeline." (Discovery Letter No. 2 at 3.) Defendant states that it has been unable to locate any current employee involved in the formation of the Care Pack program, and that it has not been able to locate any documents regarding "deciding on the timeline" because the decision was made over a decade ago. (*Id.* at 4.) Defendant further states that it does not retain employee e-mails for an extended period after the employee departs. (*Id.*)

Plaintiff does not specifically address this request, and the Court has no reason to question Defendant's representation that such documents do not exist. The Court cannot require production of documents that do not exist. The Court will not require further production.

### v. RFP Nos. 2, 3, 10, and 14

RFP Nos. 2, 3, 10, and 14 concern documents and communications related to the creation, implementation, marketing, and administering of the Care Pack program at issue in this case. (Discovery Letter No. 2 at 5.) As with RFP No. 15, Defendant states that it does not have documents related to the formation of the Care Pack program because of its age. (*Id.*) Defendant further states that it has produced documents related to the ongoing administration of the Care Pack program. (*Id.* at 6.) Plaintiff asserts this inability to find documents is "not credible," but provides no factual basis for its assertion. Again, the Court cannot require Defendant to produce documents that do not exist, so the Court will not require further production. To the extent Defendant has located and withheld privileged communications, however, Defendant must provide a privilege log. (*See id.* at 6 (stating that Defendant has not been able to locate non-privileged communications).)

### vi. RFP No. 36

Finally, RFP No. 36 seeks "[d]ocuments sufficient to identify all individuals and entities who purchased HP computer equipment and a Care Pack that covered such computer equipment and did not claim a Service Event during the six years preceding the date this Lawsuit was filed." (Discovery Letter No. 2 at 6.) Defendant acknowledges that this RFP "is essentially duplicative of Plaintiff's Interrogatories Nos. 5 and 6," and makes the same arguments regarding the request being overbroad and its reluctance to produce PII that it believes to be irrelevant. (*Id.*) As previously discussed, discovery identifying the putative class members is permissible and the PII can be produced subject to the protective order. Further, to the extent Defendant suggests there is a burden from providing this information, that burden is not undue given Plaintiff's need to know who is in the class and to conduct its investigation from class members to support both its certification motion and to establish her case.

For the first time, however, Defendant also argues that the temporal period is overbroad because Plaintiff's claims are subject to a three-year statute of limitations. (Discovery Letter No. 2 at 6.) Plaintiff does not address this point, but it appears that the six year period is appropriate. If an individual purchased computer equipment six years prior to the lawsuit and did not have any

service events in the following three years, then their ability to claim a rebate became "ripe" three years before the lawsuit was filed, *i.e.*, within the three-year statute of limitations.

Accordingly, the Court ORDERS Defendant to respond in full to RFP No. 36.

**C.     Conclusion**

For the reasons stated above, the Court ORDERS Defendant to respond to the following discovery requests: Interrogatory Nos. 5, 6, and 10, and RFP Nos. 1, 7, and 36.  Defendant is also ordered to produce a privilege log as to any privileged materials responsive to RFP Nos. 2, 3, 10, and 14.

Defendant shall produce the responsive information within 30 days of the date of this order.

This order disposes of Dkt. Nos. 77 and 78.

IT IS SO ORDERED.

Dated: December 2, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge